IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| STEVE RIDDICK, | ) | |
| Plaintiff, | ) ) ) | Case No. 7:20cv00447 |
| v. | ) ) | **MEMORANDUM OPINION** |
| TRENT, *et al.*, | ) ) ) | By:  Hon. Thomas T. Cullen United States District Judge |
| Defendants. | ) | |

Steve Riddick, a Virginia inmate proceeding *pro se*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that three mental health professionals and a former warden at Red Onion State Prison ("Red Onion") delayed his receipt of mental health treatment for two years, in violation of his rights under the Eighth Amendment.[1] After review of the record, the court concludes that the defendants' motion to dismiss must be granted in part and denied in part.

I.

At all times pertinent to his claims, Riddick was confined at Red Onion. The defendants are former warden Kiser and psychology associates Huff, Fletcher, and Trent.

Riddick alleges that, on August 29, 2016, he gave Trent a request form, complaining of "memory loss, anxiety, depression, paranoia, weight loss, confusion, trouble sleeping, nightmares, [and] trouble concentrating." (Compl. 1 [ECF No. 1]). Riddick said he had been

---

[1] Riddick's complaint also asserted that the defendants' actions also violated his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). In response to the defendants' motion to dismiss, however, Riddick has moved to withdraw his ADA and RA claims—a motion that the court will grant.

diagnosed at a prior facility with depression and anxiety and asked to be scheduled for examination by the prison psychiatrist to receive medication. Instead, Trent twice referred Riddick to the medical department, where staff referred him back to the mental health department. Riddick allegedly "relayed [his] mental health symptoms to Trent" over the next two years, but Trent failed to refer Riddick for an exam by the psychiatrist as requested. Trent promised office visits, but then cancelled or never scheduled them. In response to one form requesting mental health care, Trent stated that, after discussing the case with others on Riddick's treatment team, it had been decided that "an appointment with the psychiatrist wasn't warranted" for Riddick. (*Id.* at 2.)

"Around April 2018," Riddick "told [Kiser about his] symptoms including [his] hearing voices," and reported that Trent was denying him an appointment with a psychiatrist. (*Id.* at 2–3.) Kiser assured Riddick that he would have the psychiatrist visit the inmate. On July 13, 2018, Red Onion psychiatrist Dr. McDuffie examined Riddick and "diagnosed [him] with having schizophrenia, depression & anxiety & prescribed" medications. (*Id.* at 3.)

Before the first exam by Dr. McDuffie, Riddick told Trent's supervisors—defendants Huff and Fletcher—about his symptoms and advised them about Trent's failure to provide an appointment with Dr. McDuffie or any other form of mental health treatment. Neither Huff nor Fletcher scheduled Riddick for an examination by Dr. McDuffie, despite knowing that he had a 16-year history of drug and alcohol abuse and had been in segregated confinement for eight consecutive years (as well as shorter periods before).

Even after Riddick initial visit with Dr. McDuffie in July 2018, Trent allegedly failed to schedule later, additional examinations, refused to make "unbiased evaluations of [Riddick's]

mental health," failed to visit Riddick on his monthly rounds, or did not answer request forms asking for mental health care. (*Id.* at 5–6.) Riddick reported these issues to Dr. McDuffie. In 2018 and 2019, on a form intended to indicate whether Riddick met criteria for designation as being "Seriously Mentally Ill," Trent wrote that Riddick's "acting out behavior appeared to be volitional [and] not the result of mental illness or mental health issues." (*Id.* at 6.) Riddick describes Trent's evaluation as "biased" and "not based on medical logic." (*Id.*) He claims that his mental health "worsened because of Trent's neglect." (*Id.* at 7.)

Riddick's § 1983 complaint, received and docketed on August 4, 2020, names as defendants Trent, Huff, Fletcher, and Kiser, and alleges the following claims: (1) Trent, Huff, and Fletcher delayed Riddick mental health treatment, in violation of the Eighth Amendment (a) by their inaction prior to July 13, 2018, and (b) Trent interfered with Riddick's mental health treatment on unspecified dates after July 13, 2018; (2) Kiser did not schedule Riddick to see the psychiatrist until July 13, 2018, in violation of the Eighth Amendment; (3) Huff, Trent, Fletcher, and Kiser violated Riddick's rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act") by not providing mental health care or ensuring that he received such care; and (4) the defendants harmed Riddick through their "willful [and] wanton negligence" in violation of state law. (*Id.* at 11.) As relief, Riddick seeks monetary damages.

The defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the majority of Riddick's claims were not filed within the applicable statute of limitations while others fail to state a claim at all. Riddick has filed what he titles a "motion in response to defense motion for summary judgment [and] motion for

summary judgment by plaintiff." (ECF No. 37.) Riddick has verified the allegations in this pleading (ECF No. 37-1) and has attached copies of mental health records (ECF No. 37-2) that he incorporates by reference. Liberally construing his submissions, the court concludes that these response submissions, as a whole, are best addressed as a motion to supplement the complaint, which the court will grant, and also as a response to the defendants' motion to dismiss.[2]

In the verified response, Riddick asserts that he mailed the complaint to the court on July 12, 2020. (Resp. 5 [ECF No. 37].) Riddick also includes new allegations in the response, contending that the defendants knew Riddick met the qualifications to be assigned to the "SIP/SAM unit where [he was] from 2012–2014 because of [his] mental health needs. (*Id.* at 9.) Riddick contends that the defendants failed to ensure that he was transferred to this unit before August 2018, and, from that time until the present, leaving him in the restrictive housing unit instead, which has allegedly aggravated his mental health issues. McDuffie allegedly told Riddick in August 2018 that staff planned to send him to the Step Down program at Wallens Ridge State Prison in a few months, but Kiser kept Riddick in restrictive housing and thus "interfered with what Dr. McDuffie wanted for [Riddick]." (*Id.* at 12.)

## II.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests

---

[2] Given the status of the case, the court will not construe Riddick's submissions as a motion for summary judgment. Moreover, his motion and attachments simply do not demonstrate that the evidence is so one-sided that no reasonable fact finder could find that the defendants were not deliberately indifferent to his mental health needs. *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (noting the relevant inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law") (internal quotation marks omitted).

surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court is not bound to accept as true a legal conclusion couched as a factual assertion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), nor should the court accept a plaintiff's "'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations'" *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (footnotes and citations omitted).

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To state an actionable claim, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face" rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A prison official's deliberate indifference to an inmate's serious medical need, as reflected through the unnecessary infliction of pain through denial or delay of necessary treatment, violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), and a prison official is "deliberately indifferent" only if he "knows of and disregards [or responds unreasonably to] an excessive risk to inmate health or safety," *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"[C]ourts treat an inmate's mental health claims just as seriously as any physical health claims." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018).

Generally, a Rule 12(b)(6) motion "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Where "all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint," however, the court may determine the merits of that defense. *Id.*

As an initial matter, in his verified response to the motion to dismiss, Riddick voluntarily dismisses his claims under the ADA and the Rehab Act against all of the defendants. Therefore, the court will dismiss these claims as requested.

Riddick's state law claims for "willful and wanton negligence" must also be dismissed as time-barred under state law. Virginia's Prisoner Litigation Reform Act imposes a one-year statute of limitations for a prisoner to bring state law claims concerning his conditions of confinement. Va. Code Ann. § 8.01-243.2; *Bing v. Haywood*, 722 S.E.2d 244, 247 (Va. 2012). Riddick states that his initial evaluation by Dr. McDuffie occurred on July 13, 2018. Accordingly, based on Riddick's own allegations, the actions or inactions by the defendants that delayed this initial evaluation must have occurred more than one year before he filed his § 1983 claims in the late summer of 2020. Therefore, the court will grant the motion to dismiss Riddick's state law claims as time barred.

Because Congress did not set time limits for filing a § 1983 action, such cases are uniformly governed by the statute of limitations applicable to general personal injury actions in the state where the tort allegedly occurred. *Owens v. Okure*, 488 U.S. 235, 239, 250 (1989).

Under Virginia law, a general personal injury action, including a prisoner's § 1983 action, must be commenced within two years from the date on which the claim accrues. Va. Code Ann. § 8.01-243(A); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001). It is also well established that a § 1983 claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.,* 64 F.3d 951, 955 (4th Cir. 1995) (*en banc*).

The record reflects that, at the earliest, by July 13, 2018, when Riddick had an exam by the psychiatrist, he knew of sufficient facts to allege that the defendants had denied or delayed his access to a psychiatric evaluation and treatment. Therefore, the court concludes that Riddick's claims against the defendants for delay of access accrued on July 13, 2018, and that he had two years from that date to file a timely § 1983 claim concerning those alleged violations of his rights. *See DePaola*, 884 F.3d at 487 (noting that statute of limitations begins to run on claim for continuing violation of inmate's Eighth Amendment rights on "the date, if any, on which adequate treatment was provided").

In arguing for dismissal, the defendants rely on the fact that the court did not receive and docket Riddick's mailed complaint in this case until August 8, 2020, more than two years after his claims accrued. In addition, Riddick's complaint is not dated, nor is his signature on that document. It is well established, however, that the civil complaint of an incarcerated, *pro se* litigant must be considered "filed" within meaning of civil procedure rules when the prisoner delivered the complaint to prison authorities for mailing to the district court, and not when clerk of the court actually received the complaint. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 736 (4th Cir. 1991) (extending holding of *Houston v. Lack*, 487 U.S. 266 (1988)). As stated,

Riddick, in his verified response, indicates that he placed his complaint in the mail to the court on July 12, 2020, within two years from the earliest date when his claims accrued. Taking this evidence in the light most favorable to Riddick, the court must deny the motion to dismiss his § 1983 claims as untimely filed.

Finally, some of Riddick's complaints about Trent's treatment decisions occurred after July 13, 2018. Riddick states that, even after he began seeing Dr. McDuffie, Trent continued to downplay his mental health condition and find reasons not to schedule appointments for him. The defendants argue that, while these allegations were timely filed, they state, at most, a difference of opinion between Riddick and Trent over the medically necessary course of treatment for his condition. A showing of deliberate indifference requires more than alleged errors in judgment or disagreements between the professional and the patient about the proper treatment plan. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Farmer*, 511 U.S. at 837)). Moreover, Trent could rightly rely on Dr. McDuffie to determine whether Riddick's condition, as reported by Trent, warranted a psychiatric examination or not. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990) ("No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise."), *overruled in part on other grounds by Farmer*, 511 U.S. at 854. The court agrees that Riddick's allegations against Trent regarding events after his initial visit with Dr. McDuffie fail to state a claim on which relief could be granted.

## III.

For the reasons stated, the court concludes that the motion to dismiss must be granted in part and denied in part. Riddick's state law claims, his claims under the ADA and the Rehab

Act, and his § 1983 claims against Trent for events after July 13, 2018, will be dismissed. But the motion will be denied as to Riddick's § 1983 claims against the defendants, alleging denial or delay of Riddick's access to psychiatric care.

The clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 17th day of August, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE