IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVE RIDDICK | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20-cv-00447 |
| | ) | |
| v. | ) | **ORDER OF CONTEMPT** |
| | ) | |
| TRENT, | ) | By:   Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendant. | ) | |

Following an obscene outburst at a pretrial conference on May 4, 2023, the court held Plaintiff Steve Riddick ("Riddick") in direct criminal contempt. Although Riddick appeared at the hearing remotely from Red Onion State Prison, a maximum-security facility, the court quickly concluded the hearing due to Riddick's increasingly hostile and potentially violent conduct, out of concern for the correctional officers who were guarding him in a small conference room. Consistent with Federal Rule of Criminal Procedure 42(b), the court recites the facts underlying Riddick's summary disposition of contempt and certifies the same.[1]

On May 3, 2023, the court received Riddick's "emergency motion" to continue the trial to the next available date in Abingdon on account of an unspecified illness. (ECF No. 117.) The next day, May 4, the court convened the previously scheduled final pretrial conference with the parties in anticipation of the jury trial that was set to begin on May 9. Riddick had

---

[1] "Notwithstanding any other provision of these rules, the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies; a magistrate judge may summarily punish a person as provided in 28 U.S.C. § 636(e). The contempt order must recite the facts, be signed by the judge, and be filed with the clerk." Fed. R. Crim. P. 42(b).

previously filed an "emergency motion" asking that the trial be moved to Abingdon, but the court denied that request.[2] (*See* Emergency Motion to Transfer Venue, Apr. 10, 2023 [ECF No. 102]; Order, Apr. 11, 2023 [ECF No. 103].) In his most recent emergency motion, Riddick asserted that a "recent illness has worsened," and that the "meds [he] was given hasn't helped." (ECF No. 117.) Riddick attached a facility request wherein he complained of a "persistent cough . . . & fatigue & occasional chest pain & heart flutter." (ECF No. 117-1.) Although Riddick says he was given medication that "hasn't helped," the document he provided from the medical department does not confirm that he was prescribed any medication. (*See id.*)

Nevertheless, at the start of the pretrial conference, the court inquired about Riddick's illness and request for a continuance:

> THE COURT: All right. As you-all know, we are scheduled today for a final pretrial conference in Mr. Riddick's case against the sole remaining defendant in 7:20-cv-447, mental health counselor Donnie Trent.
> Late yesterday the Court received Mr. Riddick's what he styled as an emergency motion for continuance of his trial -- that's document ECF Number 117 -- wherein Mr. Riddick represented to the Court that he has been ill for the past couple of weeks and it sounds like he may be suffering from a -- some kind of a chest cold or a respiratory illness, and he has requested to see the doctor, and that may be up in the air.
> So given that our trial is next week, I presume Mr. Riddick feels like he is not of able mind and body and can't focus on that and has asked the Court to put off this trial.
> Mr. Riddick, anything else you want me to know?
> Mr. Riddick, do you want to tell me a little more about that?

---

[2] By Standing Order, prisoner trials—like this one—are ordinarily tried in the division in which the cause of action arose. *See* W.D. Va. Standing Order 2023-7 (Mar. 10, 2023). But as the court has *repeatedly* informed Riddick, the dates that the court and the parties had available to try this action did not coincide with an available courtroom in Abingdon that could accommodate a jury. Accordingly, the trial was set in the Roanoke division. *See* 28 U.S.C. § 1404(a). Although Riddick seems unaware of—or, more likely, unwilling to acknowledge—the court's efforts to schedule this case in Abingdon, it simply has not been feasible given the court's schedule, witness/counsel availability, and Riddick's untimely demand for a jury trial (*see* ECF Nos. 89, 95, 97).

(May 3, 2023 Hr'g Tr. 2:10–3:2 [ECF No. 120].)[3] Riddick briefly addressed his illness and the apparent difficulties he was having, but quickly pivoted to other grievances with prison staff wholly unrelated to his request for a continuance. For example, he complained about a "bag from commissary" that had been taken out of his cell (*id.* 5:7–9), being required to use the "telephone in the pod on the wall" to speak with his attorneys on another case even though he is usually permitted to use the phone "in the pod office or on the handheld GTL phone" (*id.* 6:1–8), and alleged that the Unit Manager intentionally made him use the phone in the pod "to stir up them guys against [him] because [the Unit Manager] is mad [Riddick is] filing lawsuits" (*id.* 7:16–18). After redirecting Riddick back to the topic at hand, the court inquired whether counsel for Defendant Trent opposed the request, which she did:

> My position is we're ready to go forward next Tuesday. You know, Mr. Trent is ready to come in and resolve this case which has been pending for a long time. In my -- my opinion, I don't know that Mr. Riddick has articulated sufficient grounds for a continuance. He was able to speak at length and quite clearly during the past few minutes to the Court. He has a cough, I can hear his cough, but I don't know that that means that he is medically unable to participate in this trial if it were to go forward next week.

(*Id.* 8:16–24.) The court then explained its thinking on the present motion:

> Mr. Riddick, I'm not sure what I'm going to do on this. I'm not a physician. I have very little before me other than your representations regarding your symptoms. I have some response from the medical staff saying you've been seen, but very little in the way of details about that. I don't know that I've got anything that refutes what you're saying with respect to your symptoms.

---

[3] Because the hearing was conducted via Zoom, the court retained an audio recording of the hearing which is available in the clerk's office. (The court routinely records Zoom hearings solely as a backup for the court reporter, and as a matter of course, they are not retained. Because of Riddick's outburst and the contempt finding, the court requested that the clerk retain the recording of this hearing.)

> I think [defense counsel] is correct that you made an impassioned plea for my intervention in other matters while at the same time, you know, coughing occasionally. So you're certainly engaged this morning, spirited as you typically are, but I need to determine whether or not I think there are grounds to continue this matter.

(*Id.* 9:14–10:1.) It was at that point that Riddick's anger manifested. Apparently upset because a prior trial in which he was involved had been postponed due to a medical emergency (in that case, defense counsel was experiencing late-term pregnancy complications), Riddick stated:

> MR. RIDDICK: May I add something, Cullen?
>
> THE COURT: Go ahead.
>
> MR. RIDDICK: Yeah, there's no way I can get through a trial coughing every 60 seconds. It's not just a cough. Just my body just feels -- just feels bad. I'm having, you know, chest pains, heart flutter.
> I don't think anybody, you know, in any reasonable mind would expect me to try to do a two-day trial under these type of conditions. And when you consider the mental health issues that I'm having. You know, I remember, you know, the Attorney General had a situation, he had had a medical issue, and filed a motion the day before trial and it got granted. And she didn't say anything about she was sick. She didn't even provide any type of medical documentation.
>
> THE COURT: You're talking about –
>
> MR. RIDDICK: I don't think any was required.
>
> THE COURT: Hold on. Hold on, Mr. Riddick. You're talking -- you're talking about your other case that we tried in March?
>
> MR. RIDDICK: And I didn't object to that, either.
>
> THE COURT: No.
>
> MR. RIDDICK: She said she was sick. I didn't object to it.
>
> THE COURT: No.

>MR. RIDDICK: Huh?
>
>THE COURT: That's right.
>
>MR. RIDDICK: Yeah, the one we just had in March.

(*Id.* 10:10–11:11.) The back-and-forth continued with Riddick again insisting that his trial be reset in Abingdon:

>THE COURT: All right. Mr. Riddick, here's the deal: If I end up continuing this trial, I've got very limited -- very, very limited availability to conduct a jury trial. My schedule is full through the summer. We've got probably four or five days where we can do this, and it won't be until August or September. And when we're able to set it, if there is a conflict, like there often is in Abingdon because it's a small courthouse, the trial will be in Roanoke like it was going to be next week. So if this is some effort on your part to get this –
>
>MR. RIDDICK: It's not. It's not. You heard me coughing.
>
>THE COURT: Okay.
>
>MR. RIDDICK: This is not fake. This is real.
>
>THE COURT: All right. Let me finish, Mr. Riddick, okay? So do you understand that if I grant your motion the trial is not going to occur in this case for several months. Do you understand that?
>
>MR. RIDDICK: What's the earliest date you have in Abingdon? Can you check that?
>
>THE COURT: We're not doing that, Mr. Riddick.
>
>MR. RIDDICK: Okay.
>
>THE COURT: The Court only has certain days in August and a few days in September. And we're going to see what dates the Attorney General's office has open and see if they overlap with any of my dates and then we're going to go from there. So why don't we do that, Ms. Kemp. Can you – can you give us some days in August and September where we can try this case?

> THE CLERK: Yes, Your Honor.
>
> MR. RIDDICK: While she's doing that, do you mind if I say --
>
> THE COURT: No. Mr. Riddick, I prefer that you -- that you sit there quietly like the rest of us and we'll let Ms. Kemp look at the calendar and then I'll let you say your piece, okay?
>
> MR. RIDDICK: All right.

(*Id.* 11:12–12:24.) After discussing the court's availability to reset the trial (*at Riddick's request*), Riddick's anger started to boil over again; he began raising his voice and interrupting the court, and although he would ultimately take great umbrage at what he interpreted as the court's suggesting that he was faking his illness in order to get his trial transferred to the Abingdon division, he wanted to know why his trial was not being transferred to the Abingdon division:

> THE COURT: All right. Okay.
>
> MR. RIDDICK: I was requesting –
>
> THE COURT: Go ahead, Mr. Riddick.
>
> MR. RIDDICK: You know, I filed a motion, you know, to do the hearing by Zoom because I didn't want to make a three-and-a-half-hour trip to Roanoke because of my health conditions, my health issue, so I prefer that the hearing be held in Abingdon. That's why I was asking do you have a date, a date -- the nearest available date in Abingdon so I can possibly make the trip if I -- you know, if I choose to.[4]
>
> THE COURT: Yeah. So I understand that, Mr. Riddick. The problem is, we need to try this case before September 30 because

---

[4] Riddick originally sought a transfer to the Abingdon division for trial because the three-hour ride from Red Onion State Prison (where he is housed) to Roanoke for his prior civil trial was too much on him physically, mentally, and emotionally. The court was sympathetic to his request, but a courtroom was not available in Abingdon, which is approximately an hour and twenty minutes from Red Onion, on the dates for which the trial was set. To address Riddick's concerns, however, the court was going to permit Riddick to participate in this trial entirely via Zoom.gov from Red Onion State Prison. (*See generally* Order, Apr. 11, 2023 [ECF No. 103].)

it's so old, and you -- you deserve your day in court. And the Court has the two days available to try this case because I'm continuing this case, I'm about to, on your motion because you want to.

So if you want to do that, we're going to do it either on August 15th and 16th or September 11th and 12th if we need to, but Abingdon is not available on those days. So that's not happening.

MR. RIDDICK: If -- and Abingdon is not available at all this year?

THE COURT: Mr. Riddick, don't interrupt me again. I'm going to continue to –

MR. RIDDICK: I was asking you a question.

THE COURT: Mr. Riddick, that is enough. You're going to respect me. You're going to stop talking over me. This isn't your opportunity just to have a free-for-all with the Court, okay? I've heard enough this morning. I understand what your concerns are. And you're -- and you're going to respect me. You're not going to interrupt me. You're not going to interrupt Ms. O'Shea or my courtroom deputy again.

There are two dates available. Neither of those dates -- on neither of those dates do we have a courtroom in Abingdon so we're going to have to do this in Roanoke, but I'm going to give you the option, if you don't want to make that trip, to try your case by zoom.gov, which is commonly used in these trials. You will have that option. So if you're not feeling up to it, I'm going to allow you to do it that way. And this is a relatively straightforward case, so I think that would be fine, okay? But Abingdon is not available based on my schedule that I have to continue your trial at your request, and I don't want to hear anything else about that.

MR. RIDDICK: Can I ask you a question?

THE COURT: Go ahead.

[MR. RIDDICK]: Yeah, when we had for my other case, you know, when the Attorney General filed a motion to continue because of her health, you know, you took the time to find dates in Abingdon and Roanoke. And this was the day before the trial

- 7 -

> was supposed to take place on February the 22nd. And you took the time to check dates in Abingdon, for the nearest date in Abingdon, and Roanoke. And you gave me a date in Abingdon for I think April 12. Then you gave me a date for March 27th in Roanoke. So I want to understand why we're not doing the same thing here.
>
> And also, this case hasn't been on the docket that long. It's been on the -- I filed this case in August of 2020, so it hasn't even been, what, maybe two-and-a-half years. You said four years, in your opinion, but it's actually been two, maybe two -- since August 12 or whatever of 2020. So it hasn't even been two-and-a-half years that this case has been on the docket. And it wasn't served until July of 2021.

(*Id.* 14:4–16:15.) Once it became apparent that the court was going to grant his continuance but that it was unable to transfer the trial to the Abingdon division, Riddick became enraged:

> THE COURT: All right. Mr. Riddick, I don't know how to explain this any -- any better than I have. I am going to continue this case on your motion because you want me to. I have to try this case before the end of September because it's three years old. We can't let trials just hang out there because witnesses' memories fade, evidence is not available, and it deprives both -- both of the parties the opportunity to have a full and fair chance to try their case in a timely fashion.
>
> So getting that trial done before the end of September, based on my calendar, I've only got a few days available. And of those days, Ms. Kemp has told us Abingdon has -- has court, so those courtrooms aren't available. And under our standing order the default is Roanoke. So that's where this is going to be. You don't have to make that trip if that's not going to work for you. So there's nothing more I can say about that.
>
> MR. RIDDICK: I want to just say one thing, and don't take this as disrespect. The fact that you suggested -- this is what I -- this is how I, you know, took what you said. The fact that you suggested that I came in here and put on a performance to try to get this case transferred to Abingdon and that my condition is not sincere or real, I took that as disrespect. And I took -- and I feel like you're not -- you're not -- you keeping this case in Roanoke because you believe I'm faking a illness to try to get it transferred to Abingdon because I tried to get it transferred to Abingdon before because of health reasons. And for that I'm

going to file a complaint on you. You're not going to mistreat me. You mistreated me during my trial in March 27 and 28 when you had me for two days with a strap belt around my waist when I told you I was feeling sick. I filed a complaint on that, too, and I filed it with the Fourth Circuit Court of Appeals. I'm going to do everything in my power to get you off my case because **you is a racist bastard and you -- and you -- and you hate inmates. You're not going to mistreat me. You is a racist bastard and that is disrespect.**

THE COURT: Mr. Riddick.

MR. RIDDICK: I'm going to file a complaint on you. I don't want to hear nothing else you've got to say. **You racist, evil, devil. You're not going to mistreat me.** You mistreated me at my last trial in Roanoke. I'm going to do everything in my power to get you off my case even if I've got to get my family to notify the U.S. Justice Department. I'm on it. You are not going to mistreat me. You lied to me about when you said *Johns v. Gwinn* was vacated to the Fourth Circuit Court of Appeals.

THE COURT: Mr. Riddick.

MR. RIDDICK: My attorneys told me that is not true.

THE COURT: Mr. Riddick.

MR. RIDDICK: That was never vacated to the Fourth Circuit.

THE COURT: Mr. Riddick, you're –

MR. RIDDICK: You lied to me.

THE COURT: Mr. Riddick, you're in contempt of court.

MR. RIDDICK: You lied to me during my court. Let's go, man [standing up and gesturing towards correctional officers]. You lied to me during my case.

THE COURT: Mr. Riddick. Mr. Riddick, you –

MR. RIDDICK: *Johns v. Gwinn* was not vacated –

THE COURT: Turn off this -- turn off his –

> MR. RIDDICK: Come on [standing and attempting to leave].
>
> THE COURT: Mr. Riddick, you stay right where you are. Mr. Riddick, you're in contempt of court and the Court is going to sanction you for your comments today, your demeanor. This is wholly unacceptable.
> The trial of this matter is continued. Mr. Riddick will be sanctioned accordingly for his conduct today, and that will conclude the proceeding. We will be adjourned.

(*Id.* 16:16–19:10 (emphasis added).) During his diatribe, Riddick put on his sunglasses, was aggressively handling his papers, trying to stand up from his chair, jerking forcefully against his restraints, and demanding that the guard remove him from the hearing room. Out of an abundance of caution (and with a mind towards the safety of the correctional officers who had to contain Riddick), the court adjourned the hearing.

It is beyond dispute that Riddick "has the right to disagree with the rulings entered by the Court," but "[t]his Court will not sit quietly by in the face of [his] inflammatory invective." *Bethel v. Excambia Cnty. Sheriff's Office*, Case No. 3:05cv376/MD, 2006 WL 3498597, at *1 (N.D. Fl. Dec. 4, 2006). When Riddick disagrees with this court's—or any court's—rulings, it is *not* his right "to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal." *Sacher v. United States*, 343 U.S. 1, 9 (1952). "Such dissidence does not confer upon Riddick['s] license to insult and vilify this Court . . . ." *Bethel*, 2006 WL 3498597, at *1. "Litigants are understandably disappointed when they do not prevail in court, but that does not give them license to attack the integrity of the judiciary. Such abusive conduct will not be tolerated, even from a *pro se* litigant." *In re Mann*, 229 F.3d 657, 659 (7th Cir. 2000); *see also Theriault v. Silber*, 579 F.2d 302, 303 (5th Cir. 1978) ("Our *pro se* practice is a shield against the technical requirements of a past age; it is not a sword with which to insult a trial judge.")

- 10 -

Here, Riddick's hostile, obscene, and contemptible conduct was in the presence of and directed at the court. Accordingly, the charge of contempt is proper for summary disposition. *See* Fed. R. Crim. P. 42(b). "Congress has provided federal courts with the power to impose criminal penalties for 'contempt of the court's authority.'" *United States v. Peoples*, 698 F.3d 185, 189 (4th Cir. 2012) (citing 18 U.S.C. § 401). Rule 42(b) "authorizes the court to invoke summary procedures when contumacious behavior is seen or heard by judge and committed in the actual presence of court." *United States v. Boston*, 539 F. App'x 209, 210 (4th Cir. 2013) (per curiam) (unpublished) (citing *United States v. Vague*, 697 F.2d 805 (7th Cir. 1983); *United States v. Flynt*, 756 F.2d 1352 (9th Cir. 1985), *amended*, 764 F.2d 675). "Such acts include '[m]isbehavior of any person in [the court's] presence or so near thereto as to obstruct administration of justice.'" *Peoples*, 698 F.3d at 189 (quoting 18 U.S.C. § 401(1)).

There is no doubt that Riddick's conduct was "contumacious" and contemptible. His slander of the court would ordinarily be enough to sustain a charge of contempt; "there is an implicit standing order that parties, counsel, and courtroom attendees refrain from direct and egregious insults to judicial authority," *United States v. Marshall*, 371 F.3d 42, 48 (2nd Cir. 2004), and "[c]ourts have repeatedly found that offensive words directed at the court may form the basis for a contempt charge." *Peoples*, 698 F.3d at 190. But Riddick's outburst was also violent and unquestionably "obstruct[ed] the administration of justice." 18 U.S.C. § 401(1). The court had to adjourn the hearing to contain him and protect the correctional officers who were accompanying him. Accordingly, his conduct is subject to summary contempt, and the court informed Riddick at the hearing that he was in contempt and that he would be sanctioned for his conduct. (*See* Hr'g Tr. 18:22; 19:4–10.)

All that remains, then, is to determine an appropriate sanction. First, Riddick is **FINED** the sum of $250. When Riddick filed this case, he signed a Consent to Fee Agreement that authorized "prison officials to withhold from [his] prison account . . . an amount no more than 20% of each prior month's income, until the filing fee . . . has been collected in full." (ECF No. 17.) But Riddick also agreed that, "[b]y executing [the] document, [he] also authorize[d] withholding of any amount of costs, sanctions, and/or fees which may be imposed by the Court as a result of or during this litigation." (*Id.*) Accordingly, the officials of any prison at which Riddick is housed (or may be housed in the future) are **ORDERED** to withhold funds from Riddick's prison account and forward to the court, as outlined in his signed Consent to Fee, an additional $250 above and beyond the full filing fee assessed in this case (and the many others he has filed).

Additionally, the court has an obligation to ensure the orderly administration of justice. Given that Riddick was off-site during the hearing, there was little the court could do to control his outburst or reconvene the proceedings after Riddick had calmed down. Moreover, not every prison has the requisite staff to devote the necessary security personnel to supervise Riddick during remote hearings, and when this matter goes to trial, the court will not impose on the jury the burden of waiting out Riddick's outbursts (should they occur again). Although the court previously offered Riddick the opportunity to attend the trial of this matter via Zoom (so as not to have to make the longer trip to Roanoke), the court no longer has any confidence that Riddick will conduct himself appropriately or that it can ensure the orderly administration of justice if Riddick is not in the court's presence. For that reason, Riddick's sanction will also include a requirement that he attend the trial of this matter in person. Insofar as the court

offered him a virtual option to attend his trial (*see* Order, Apr. 11, 2023 [ECF No. 103]), that offer—and Riddick's acceptance of it (*see* ECF No. 106-1; Order, Apr. 26, 2023 [ECF No. 111])—is **VACATED**.

As required by Fed. R. Crim. P. 42(b), this Order is to be filed with the Clerk. The Clerk is further directed to forward a copy of this Order to the parties, and counsel for Defendant Trent is further directed to provide copies of the same to the warden of Red Onion State Prison and appropriate officials at the Department of Corrections.

**ENTERED** this 15th day of May, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE